# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (SCC) |
| Debtors. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adversary Proceeding No. 16-01019 (SCC) |
| Plaintiff, | |
| v. | |
| 1ST ADVANTAGE MORTGAGE, L.L.C., *et al.*, | |
| Defendants. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adversary Proceeding No. 18-01839 (SCC) |
| Plaintiff, | |
| v. | |
| IMORTGAGE.COM, INC., and LOANDEPOT.COM, LLC, | |
| Defendants. | |

## Table of Contents

Table of Authorities ........................................................................................................ i

Introduction ................................................................................................................... 1

Alleged Facts ................................................................................................................. 3

Argument ....................................................................................................................... 5

I.      Delaware law applies to LBHI's successor liability claim against loanDepot ........ 5

II.     The Complaint fails to allege successor liability under Delaware law. ................... 6

        A.      The elements of *de facto* merger are not alleged .......................................... 7

                1.      loanDepot neither acquired *all* of iMortgage's assets nor *all*
                        of its liabilities ................................................................................... 8

                2.      The loanDepot units were not issued directly to iMortgage's
                        shareholders ..................................................................................... 11

                3.      LBHI does not allege non-compliance with Delawar's asset-sale
                        statute ............................................................................................... 13

        B.      The elements of mere continuation are not alleged ................................... 15

                1.      There is no identity of ownership between iMortgage and
                        loanDepot ......................................................................................... 16

                2.      There is no identity of control between iMortgage and
                        loanDepot ......................................................................................... 17

                3.      iMortgage was not dissolved as an entity ........................................ 19

        C.      LBHI's conclusory fraud allegation does not satisfy Rule 9(b)'s
                heightened pleading standard ..................................................................... 19

Conclusion ……………………………………………………………………..…... 21

## Table of Authorities

**STATE CASES**

*Butler v. New Keystone Copper Co.*, 93 A. 380 (Del. Ch. 1915) ..................................... 12

*Drug, Inc. v. Hunt*, 168 A. 87 (Del. 1933) ............................... 8, 9, 11, 12, 13, 14

*Fountain v. Colonial Chevrolet Co.*, 1988 WL 40019 (Del. Super. Ct.) .................... 7, 15

*Furnari v. Wallpang, Inc.*, 2014 WL 1678419 (Del. Super. Ct.) ....................................... 7

*Hariton v. Arco Elecs., Inc.*, 188 A.2d 123 (Del. 1963)............................................. 12, 14

*Heilbrunn v. Sun Chem. Corp.*, 150 A.2d 755 (Del. 1959)........................................ 12, 19

*Magnolia's at Bethany, LLC v. Artesian Consulting Eng'rs Inc.*, 2011 WL 4826106
     (Del. Super. Ct.) ....................................... 6, 7, 10, 13, 15, 16, 19

*Maine State Retirement Sys. v. Countrywide Fin. Corp.*, 2011 WL 1765509
     (C.D. Cal.) ....................................................................... 7, 14, 19

*Orzeck v. Englehart*, 195 A.2d 375 (Del. 1963) ............................................................ 14

*Ross v. Desa Holdings Corp.*, 2008 WL 4899226 (Del. Super. Ct.) ........................... 6, 15

*Spring Real Estate, LLC v. Echo/RT Holdings, LLC*, 2013 WL 6916277
     (Del. Ch.) ...................................... 7, 10, 14, 15, 17, 19

**FEDERAL CASES**

*Allstate Ins. Co. v. Countrywide Fin. Corp.*, 842 F. Supp. 2d 1216
     (C.D. Cal. 2012) ...................................................... 7, 21

*Apace Commc'n, Ltd. Burke*, 522 F. Supp. 2d 509 (W.D.N.Y. 2007) ........................... 20

*Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240 (2d Cir. 1987) ............... 20

*Bravado Int'l Group Merchandising Serv., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177
     (E.D.N.Y. 2009) ....................................................... 20

*Cargo Partner AG v. Albatrans, Inc.*, 207 F. Supp. 2d 86 (S.D.N.Y. 2002) ............. 16, 19

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ........................................... 1

*DiBella v. Hopkins*, 403 F.3d 102 (2d Cir. 2005)........................................................... 15

*E.I. Du Pont de Nemours & Co. v. Smith*, 252 F. 491 (4th Cir. 1918) ............................. 9

*Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535 (D. Del. 1988) ...................... 15, 16, 17

*Energy Intelligence Group, Inc. v. Cowen and Co., LLC*, 2016 WL 3939747
     (S.D.N.Y.) ......................................................... 6, 7, 9

*Fehl v. S. W. C. Corp.*, 433 F. Supp. 939 (D. Del. 1977)............................................ 6, 15

*Hayden Capital USA, LLC v. Northstar Agri Indus., LLC*, 2012 WL 1449257
     (S.D.N.Y.) .......................................................... 6, 13

*In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553 (9th Cir. 2012) ................................. 16

*In re Coudert Bros. LLP*, 673 F.3d 180 (2d Cir. 2012) ..................................................... 5

*In re General Motors LLC Ignition Switch Litig.*, 2017 WL 3382071 (S.D.N.Y.) ............ 6

*In re Sharp Int'l Corp.*, 403 F.3d 43 (2d Cir. 2005) ....................................................... 20

i

*Ladjevardian v. Laidlaw–Coggeshall, Inc.,* 431 F. Supp. 834 (S.D.N.Y. 1977) ............ 16
*Lopez v. Delta Int'l Machinery Corp.*, 312 F. Supp. 3d 1115 (D.N.M. 2018) ................ 10
*Marnavi S.p.A v. Keehan*, 900 F. Supp. 2d 377 (D. Del. 2012) ........................................ 10
*New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201 (2d Cir. 2006) . ................................ 15
*Pinto v. Allstate Ins. Co.,* 221 F.3d 394 (2d Cir. 2000) ..................................................... 15
*Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406 (2d Cir. 2008)............................. 5
*Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*, 971 F. Supp. 2d 368 (S.D.N.Y. 2013) .... 6
*Volpe v. Am. Language Commc'n Ctr., Inc.*, 200 F. Supp. 3d 428 (S.D.N.Y. 2016)  ........ 5
*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156
    (S.D.N.Y. 2015) ............................................................................................................. 5

## RULES

Fed. R. Civ. P. 9(b) ...................................................................................... 3, 19, 20, 21
Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1
Fed. R. Bankr. P. 7012.................................................................................................. 1

## STATUTES

Del. Code Ann. tit. 8, § 259(a) ...................................................................................... 9
Del. Code Ann. tit. 8, § 271 .......................................................................................... 12

## OTHER AUTHORITIES

EDWARD P. WELCH, ET AL., FOLK ON THE DELAWARE GENERAL CORPORATION
    LAW § 271.10[2] (6th ed.).......................................................................................... 9
Jon T. Hirshoff, John H. Lawrence Jr., and Daniel H. Peters, *Successor Liability in Asset
    Acquisition Transactions*, ABA M&A Lawyers' Library, January 12, 2019 ............. 19

## DEFENDANT LOANDEPOT.COM, LLC'S
## MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012, defendant loanDepot.com, LLC ("loanDepot") hereby moves for an order dismissing the successor liability claim against it for failure to state a claim upon which relief can be granted.

### Introduction

Plaintiff Lehman Brothers Holdings Inc. ("LBHI") has sued loanDepot as the alleged successor of co-defendant iMortgage.com, Inc. ("iMortgage") which originated the subject loans. [Dkt. No. 1 ¶¶ 42-53 (hereinafter the "Complaint")][1] loanDepot purchased the bulk of iMortgage's assets in 2013. [*Id*. ¶ 42; Third Amended and Restated Limited Liability Company Agreement (the "LLC Agreement") at 1][2] LBHI contends this somehow subjected loanDepot to all of iMortgage's liabilities, including LBHI's contractual indemnification claim against iMortgage.

The general rule, however, is that an asset purchaser takes the assets free of the seller's liabilities. Certain narrow exceptions have been recognized, although not consistently in all jurisdictions, two of which LBHI invokes here: *de facto* merger and mere continuation. The general idea behind *de facto* merger is that an asset sale

---

[1] "Dkt. No. __" refers to filings in adversary proceeding number 18-01839.
[2] The LLC Agreement may be considered by the Court without converting the motion to dismiss into one for summary judgment because LBHI expressly references and relies on the document in the Complaint (*see* ¶ 43). *See Chambers v. Time Warner, Inc*., 282 F.3d 147 (2d Cir. 2002) (holding document may be considered where plaintiff references and relies on the terms and effect of the document in the complaint).

mimicking a merger should be treated as a merger. In a merger, the entities are

combined with the surviving entity acquiring *all* of the extinguished entity's assets and

assuming *all* of its liabilities; one entity is completely absorbed and subsumed by the

other. The extinguished entity's shareholders receive stock in the surviving entity.

*De facto* merger does not apply here for three reasons. First, LBHI acknowledges

in the Complaint that iMortgage retained some assets and liabilities—and thus the

complete absorption characteristic of a merger does not exist here. [Dkt. No. 1 ¶¶ 42 &

46] Second, the equity portion of the consideration was paid to iMortgage, not directly

to its shareholders. [LLC Agreement at 1 (noting "the issuances of the Class I Common

Units to Seller" with "Seller" defined as "iMortgage.com, Inc.")] Third, the Delaware

Supreme Court has repeatedly held that an asset-sale complying with Delaware's asset-

sale statute will not be treated as a *de facto* merger. LBHI does not allege the transaction

failed to comply with Delaware's asset-sale statute in any respect.

Likewise, the mere continuation doctrine requires that the seller and buyer be

functionally the same entity; it applies where the same people own and control both

entities such that the buyer should be treated as a mere continuation of the seller. The

theory aims to capture those situations where the asset sale was in form only and

amounted to nothing more than a reorganization of the seller designed to evade

creditors. The doctrine is inapplicable here because LBHI does not allege the same

people own and control iMortgage and loanDepot as entities. Just the opposite, the LLC

Agreement shows that loanDepot has numerous other owners. [LLC Agreement,

loanDepot.com, LLC Schedule of Unitholders (last schedule to document)] The LLC

Agreement further shows, as alleged in the Complaint, that iMortgage's principals only control the "iMortgage Division" within loanDepot, a discrete business unit of the company. [*Id*. at 1 & 61 § 5.8] They do not control loanDepot as an entity, as required for mere continuation liability. There is thus no basis for concluding that iMortgage and loanDepot are functionally one and the same entity.

Last, LBHI attempts to bolster its successor liability claim by alleging the asset sale was designed to evade iMortgage's creditors. This is a veiled allegation of creditor fraud that must comply with Rule 9(b)'s particularity requirement. The allegation here is cursory and conclusory. LBHI's successor liability claim should, therefore, be dismissed because it relies on a threadbare creditor-fraud allegation that fails to satisfy Rule 9(b)'s heightened pleading standard.

**<u>Alleged Facts</u>**

The successor liability claim against loanDepot arises out of its 2013 purchase of the bulk of iMortgage's assets. [Dkt. No. 1 ¶ 42; LCA Agreement at 1] The Complaint alleges that loanDepot "acquired substantially all" of iMortgage's assets, including its "goodwill and intellectual property," and assumed "certain agreements and contracts" of iMortgage. [Dkt. No. 1 ¶¶ 42 & 46] The Complaint does not allege the Loan Purchase Agreement (incorporating the Seller's Guide)—under which iMortgage originated the subject loans and LBHI sues—is one of the assumed contracts. There is no allegation that loanDepot assumed any of iMortgage's non-contractual liabilities.

The Complaint alleges that, following the purchase, iMortgage "no longer had any of the assets, employees, offices, phone lines, websites, business relationship, or

credit facilities required to do business, and its business operations promptly ceased."
[*Id.* ¶ 45] loanDepot "continued Defendant-Seller's enterprise under the 'iMortgage'
trade name, including continuation of management, personnel, physical location,
intellectual policy, and general business operations." [*Id.* ¶ 47] "Defendant-Successor
operates one or more of Defendant-Seller's former fax and phone numbers, and uses
Defendant-Seller's former web address and email domain name." [*Id.* ¶ 50]

The Complaint alleges that iMortgage's employees were offered jobs at
loanDepot, although there is no allegation regarding how many accepted. [*Id.* ¶ 48]
iMortgage's officers allegedly received division-level appointments within a newly
created "iMortgage division" at loanDepot, but there is no allegation they were
appointed to any company-wide officer or director positions at loanDepot. [*Id.*]

This is consistent with the LLC Agreement, referenced in paragraph 43 of the
Complaint. The LLC Agreement provides the iMortgage Division of loanDepot will be
managed by the iMortgage Committee comprised of certain iMortgage shareholders.
[LLC Agreement at 61 § 5.8] The LLC Agreement states that "Persons who are
members of the iMortgage Committee shall not be deemed officers and Directors" of
loanDepot. [*Id.*] The iMortgage Committee is "subject to the authority and direction of
the Board." [*Id.* § 5.8(g)] The Complaint does not allege anyone from iMortgage was
appointed to loanDepot's Board.

As acknowledged in the Complaint, the consideration for the asset purchase was
part cash and part equity in loanDepot. [Dkt. No. 1 ¶ 51 (acknowledging "cash
consideration"); LCA Agreement at 1 (describing equity consideration)] With respect to

4

the equity consideration, the LoanDepot units were issued to iMortgage which then

distributed the units to its shareholders. [LLC Agreement at 1] iMortgage's shareholders

were thereafter admitted as members to loanDepot under the LLC Agreement. [*Id.*; Dkt.

No. 1 ¶ 43]

## <u>Argument</u>

### I.    Delaware law applies to LBHI's successor liability claim against loanDepot.

LBHI, iMortgage, and loanDepot are all Delaware entities. LBHI and iMortgage

are Delaware corporations; loanDepot is a Delaware limited liability company. [Compl. ¶

4; Ex. 1 (printout from Delaware Division of Corporations showing iMortgage is a

"domestic" corporation); Ex. 2 (printout from Delaware Division of Corporations

showing loanDepot is a "domestic" limited liability company); *Lehman Brothers Holding*

*Inc. v. imortgage.com, Inc.*, United States District Court, District of Arizona, Case No.

2:11-cv-00056-JAT, Doc. 1 ¶ 4 (prior complaint LBHI filed against iMortgage alleging it

is a Delaware corporation)][3]

This Court applies New York choice-of-law rules when adjudicating state law

claims in an adversary proceeding. *See In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d

Cir. 2012) ("It is well established that a federal court sitting in diversity must generally

---

[3] The Court may take judicial notice of documents retrieved from official government
websites. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F.Supp.3d 156,
166 (S.D.N.Y. 2015); *Volpe v. Am. Language Commc'n Ctr., Inc.*, 200 F.Supp.3d 428,
431 (S.D.N.Y. 2016), *aff'd*, 692 F. App'x 51 (2d Cir. 2017); *Staehr v. Hartford Fin.
Servs. Grp.,Inc.,* 547 F.3d 406, 426 (2d Cir. 2008) ("[M]atters judicially noticed by the
District Court are not considered matters outside the pleadings.").

apply the choice of law rules of the state in which it sits. And it is now well established that a bankruptcy court must also apply state choice of law rules."). New York applies the law of the alleged successor's state of incorporation—here Delaware. This is because successor liability, like alter ego and veil piercing, implicates the integrity of the corporate form and whether it should be disregarded; the state of incorporation holds the strongest interest in the status of an entity created under its laws. *See Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*, 971 F. Supp. 2d 368, 375 (S.D.N.Y. 2013) (applying Delaware law to successor liability claim against Delaware corporation); *Energy Intelligence Group, Inc. v. Cowen & Co., LLC*, 2016 WL 3939747, at *10 (S.D.N.Y.) (same); *Hayden Capital USA, LLC v. Northstar Agri Indus., LLC*, 2012 WL 1449257, at *7 (S.D.N.Y.) ("As Delaware has a strong interest in the successor liability of the PICO Defendants and New York has virtually no interest, Delaware law will govern."); *In re General Motors LLC Ignition Switch Litig.*, 2017 WL 3382071, at *13 (S.D.N.Y.) ("Applying this analysis, courts in New York have generally held that successor liability claims are governed by the law of the state of incorporation.").

## II.    The Complaint fails to allege successor liability under Delaware law.

The general rule under Delaware law is "that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor, including those arising out of the former's tortious conduct." *Fehl v. S. W. C. Corp.*, 433 F. Supp. 939, 945 (D. Del. 1977); *see also Ross v. Desa Holdings Corp.*, 2008 WL 4899226, at *4 (Del. Super. Ct.) (recognizing general rule); *Magnolia's at Bethany, LLC v. Artesian Consulting Engineers Inc.,* 2011 WL

4826106, at *2 (Del. Super. Ct.) (same); *Fountain v. Colonial Chevrolet Co.*, 1988 WL 40019, at *7 (Del. Super. Ct.) (same); *Furnari v. Wallpang, Inc.*, 2014 WL 1678419, at *12 (Del. Super. Ct.) (same).

Certain narrow exceptions to this general rule have been recognized, two of which LBHI invokes here: *de facto* merger and mere continuation. "A plaintiff bears the burden to adequately plead in its complaint the elements of the alleged exceptions to the general rule that asset purchasers do not bear successor corporate liability." *Furnari*, 2014 WL 1678419, at *12 (Del. Super. Ct.) (cleaned up) (dismissing successor liability claim on Rule 12(b)(6) motion for failure to plead an adequate factual basis for the asserted exceptions); *Magnolia's at Bethany*, 2011 WL 4826106, at *1 (Del. Super. Ct.) (granting motion to dismiss "because Magnolia's did not adequately plead in its complaint the elements of the alleged exceptions to the general rule on successor corporate liability"); *Spring Real Estate, LLC v. Echo/RT Holdings, LLC*, 2013 WL 6916277, at *5 (Del. Ch.) (dismissing successor liability for failure to adequately allege exception elements); *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 842 F. Supp. 2d 1216, 1234 (C.D. Cal. 2012) (same); *Maine State Retirement Sys. v. Countrywide Fin. Corp.*, 2011 WL 1765509, at *8 (C.D. Cal.) (same).

## A.    The elements of *de facto* merger are not alleged.

Delaware courts apply the *de facto* merger doctrine "sparingly, only in very limited contexts." *Maine State Retirement Sys.*, 2011 WL 1765509, at *3 (C.D. Cal.). The court in *Energy Intelligence* emphasized the rarity of the doctrine's application: "The parties have not presented, and we have not found, a Delaware case finding a de facto

7

merger since Drug, Inc. in 1933." 2016 WL 3939747 at *11 (S.D.N.Y.). The nearly 100-year-old case the court was referring to is *Drug, Inc. v. Hunt*, 168 A. 87 (Del. 1933).

*Drug* was a classic *de facto* merger. Household Products, Inc. converted the stock of one of its shareholders and thereafter sold its assets to Drug Incorporated in exchange for shares in the company. There was no cash consideration. *Id*. at 89-90. In the sale document, which was termed a "reorganization," Drug not only acquired all of Household's assets, but also expressly assumed "all the liabilities and obligations of Household," just as in a merger. *Id*. at 89. Also as in a merger, Drug issued the stock directly to Household's shareholders, not to Household; the stock never came into Household's possession. *Id*. at 95. The receiver for the shareholder whose stock was taken later sued Drug alleging it was liable for the converted stock because the transaction amounted to a *de facto* merger. The Delaware Supreme Court agreed:

> . . . [U]nder the modern development of the law of corporations, where one corporation transfers all of its assets to another corporation, and payment is made in stock, issued by the transferee directly to the transferring corporation, in exchange for their stock in that corporation, the transferee agreeing to assume all of the debts and liabilities of the transferor, it is, also, well settled that persons having claims against the transferor may, in most cases, at least, proceed in law, at the first instance, against the transferee.

*Id*. at 96. *Drug* appears to be the only reported decision in which any Delaware court has found an asset purchaser liable for the seller's debts based on *de facto* merger.

### 1.    loanDepot neither acquired *all* of iMortgage's assets nor *all* of its liabilities.

The basic idea behind *de facto* merger is to treat an asset sale that mimics a merger as a merger, including with respect to the surviving entity's liability for the extinguished

entity's debts. In a merger, under Delaware law, "*all* property . . . of said constituent corporations . . . shall be vested in the corporation surviving or resulting" and "*all* debts, liabilities, and duties . . . attach to said surviving or resulting corporation." Del. Code Ann. tit. 8, § 259(a) (emphasis added). One entity completely absorbs and subsumes the other through a complete transfer of all assets and liabilities. In *Drug*, the Delaware Supreme Court repeatedly cited the purchaser's acquisition of "*all*" assets and assumption of "*all*" liabilities in finding a *de facto* merger. 168 A. at 95-96 (emphasis added). *Drug* cited to *E.I. Du Pont de Nemours & Co. v. Smith*, 252 F. 491 (4th Cir. 1918), where there was similarly a complete transfer of *all* assets and liabilities. *Id.* at 494 (emphasizing in particular the "inclusive and unlimited assumption of liability").

There is no *de facto* merger where, as here, the seller retains some assets and liabilities, *i.e.*, where the absorption was incomplete. *See Energy Intelligence*, 2016 WL 3939747 at *10 (S.D.N.Y.) ("[T]he elements of a de facto merger in Delaware are clearly more rigorous: they require a transfer of all of the transferor's assets and an assumption of all its liabilities, in exchange for a payment made in the stock of the transferee directly to the shareholders of the transferor.") (emphasis in original); EDWARD P. WELCH, ET AL., FOLK ON THE DELAWARE GENERAL CORPORATION LAW § 271.10[2] (6th ed.) (stating that *de facto* merger under Delaware law requires "(1) one corporation transfers *all* of its assets to another corporation; (2) payment is made in stock, issued by the transferee directly to the stockholders of the transferring corporation; and (3) in exchange for their stock in that corporation, the transferee agrees to assume *all* the debts and liabilities of the transferor.") (emphasis added).

In *Magnolia's at Bethany,* 2011 WL 4826106 (Del. Super. Ct.), a condominium developer faced liability to unit owners for water leaks from a rooftop pool. *Id*. at \*1. The architectural and engineering firm responsible for the design had since been sold by asset transfer. *Id*. The developer sued the transferee for indemnification of the developer's liability to third parties on a *de facto* merger theory, very similar to this case. *Id*. The court rejected the claim on a Rule 12(b)(6) motion because the buyer's absorption of the seller was incomplete. *Id*. at \*3. The buyer purchased the seller's uncompleted contracts and permits related thereto and certain other assets, but not everything. *Id*. at \*1. The only assumed liabilities were those related to the acquired contracts and permits. *Id*. The court held there was no *de facto* merger because "Artesian only acquired some of Meridian's assets" and "only assumed some of Meridian's debts and liabilities." *Id*. at \*3. The court held there was no *de facto* merger even though all of the seller's employees went to work for the buyer, the seller's owner signed a 10-year consulting agreement with the buyer, the buyer leased and occupied the seller's premises, and the buyer displayed the seller's projects as its own on its Facebook page. *Id*. at \*\*1-2.

Similarly, in *Spring Real Estate*, 2013 WL 6916277 (Del. Ch.), a judgment creditor's *de facto* merger claim was dismissed on a Rule 12(b)(6) motion in part because "RayTrans did not transfer all of its assets" and "Echo/RT expressly did not agree to assume all of RayTrans's liabilities." 2013 WL 6916277, at \*5 (Del. Ch.); *see also Marnavi S.p.A v. Keehan*, 900 F. Supp. 2d 377, 397 (D. Del. 2012) ("Here, neither the 2001 spin-off of APC from APS nor the 2004 transactions . . . constituted a transfer of all assets; . . . nor did APC agree to assume all debts and liabilities of APS."); *Lopez v. Delta*

*Int'l Machinery Corp.*, 312 F. Supp. 3d 1115, 1162 (D.N.M. 2018) (applying Delaware law) (granting defendant's summary judgment motion on *de facto* merger claim in part because "Black & Decker did not agree to assume Pentair Inc.'s debts and liabilities.").

Here, LBHI only alleges that loanDepot purchased "substantially all"—but not all—of iMortgage's assets. [Dkt. No. 1 ¶ 42] As to liabilities, LBHI only alleges that loanDepot "assumed . . . certain agreements and contracts" of iMortgage. [*Id*. ¶ 46] There is no allegation that loanDepot assumed iMortgage's obligations under the Loan Purchase Agreement (incorporating the Seller's Guide) under which iMortgage originated the subject loans and LBHI sues. [*Id*.] Nor is there any allegation that loanDepot assumed any of iMortgage's non-contractual liabilities. [*Id*.]

## 2. The loanDepot units were not issued directly to iMortgage's shareholders.

The asset purchase in *Drug* was treated as a merger because the purchaser's stock was issued directly to the seller's shareholders, rather than to the seller, which is characteristic of a merger. 168 A. at 95. The buyer in *Drug* not only took all of the seller's assets and liabilities, but further acquired all of its stock, thereby completely absorbing the seller. *Id*. Here, by contrast, the consideration was cash and stock, not stock exclusively as in *Drug*. There is no allegation that loanDepot acquired iMortgage's stock as in *Drug*. Most importantly, the stock portion of the consideration was issued to iMortgage, not directly to its shareholders as in *Drug*.

LBHI focuses on iMortgage's ensuing distribution of the loanDepot units to iMortgage's shareholders, leading to their admission as members in loanDepot. This does

11

not trigger a *de facto* merger under Delaware law. In *Hariton v. Arco Electronics, Inc.*, 188 A.2d 123 (Del. 1963), the Delaware Supreme Court held that the seller's "mandatory plan of dissolution and *distribution*" of the buyer's stock did not constitute a *de facto* merger. 188 A.2d at 125 (emphasis added). The plaintiff argued the combination of issuance, distribution, and dissolution was "illegal" under the asset sale statute as "a misuse of the power granted under § 271, and a *de facto* merger results." *Id.* at 124. The court rejected the argument, noting "no Delaware case has held such procedure to be improper." *Id.* at 125. "We now hold that the reorganization accomplished here through § 271 . . . is legal." *Id.* The court found *Drug* "patently inapplicable" because "[h]ere it is admitted that the provisions of the statute were fully complied with." *Id.*

The combination of issuance, distribution, and dissolution are not improper because the actions if "taken separately . . . would have been legal." *Id.*; *see also Heilbrunn v. Sun Chem. Corp.*, 150 A.2d 755, 756 (Del. 1959) (rejecting *de facto* merger argument where asset purchase agreement called for seller to distribute the buyer's stock "as soon as possible after the closing of the transaction" and then dissolve).

Delaware's asset sale statute requires the consideration be paid to the selling entity. Del. Code Ann. tit. 8, § 271. So long as that occurs, the statute is complied with, even if the seller thereafter distributes the consideration to its equity holders. *See Hariton*, 188 A.2d at 125; *Heilbrunn*, 150 A.2d at 756. There was no *de facto* merger in *Hariton* and *Heilbrunn* because the stock passed through the seller, but a *de facto* merger was found in *Drug* because the stock never came into the seller's possession. In *Drug*, the Delaware Supreme Court distinguished *Butler v. New Keystone Copper Co.*, 93 A. 380

12

(Del. Ch. 1915) on the basis that "the stock issued by the transferee corporation in return for the mine transferred in that case was to the transferring corporation and not its shareholders." *Drug*, 168 A. at 96; *see also Fehl,* 433 F. Supp. at 947 ("Only in a few cases, where the consideration passed directly to the transferor's stockholders without coming into possession of the transferor corporation, has a *de facto* merger been found."); *Hayden Capital USA, LLC v. Northstar Agri Indus., LLC*, 2012 WL 1449257, at *7 (S.D.N.Y.) (holding "consideration for the asset sale must be paid directly to the predecessor company's shareholders to sustain a claim for successor liability under the *de facto* merger exception under Delaware law"); *Magnolia's at Bethany,* 2011 WL 4826106, at *3 (Del. Super. Ct.) (holding *de facto* merger requires that "payment is made in stock, issued by the transferee directly to the shareholders of the transferring corporation").

### 3.    LBHI does not allege non-compliance with Delaware's asset-sale statute.

The Delaware Supreme Court notes early in the *Drug* opinion that "[i]f the transaction between Household Products, Inc. and Drug, Incorporated . . . constituted a bona fide sale . . . under section 64 of the General Corporation Law [the predecessor to the current statute] . . . it is conceded that Drug, Incorporated would not be liable for the debts [of Household]." *Drug*, 168 A. at 94. The court found Drug liable for Household's debts because "the transaction in question" was not "under section 64A" because "the consideration for the transfer was not paid to Household Products, Inc., but to its stockholders." *Id*. at 95. The Delaware Supreme Court made clear that it would not have

13

found Drug liable for Household's debts under a *de facto* merger theory had the
transaction complied with the asset-sale statute.

Subsequent decisions by the Delaware Supreme Court confirm that a statutorily
compliant asset sale will not be treated as a *de facto* merger. *See Hariton v. Arco
Electronics, Inc.*, 188 A.2d 123, 125 (Del. 1963) (holding asset sale resembling merger
would not be treated as a *de facto* merger because it was properly accomplished under
asset-sale statute and distinguishing *Drug* on the ground it involved "disregard" of the
statute); *Orzeck v. Englehart*, 195 A.2d 375, 378 (Del. 1963) (describing *de facto* merger
as "recognized in cases of sales of assets for the protection of creditors of stockholders
who have suffered injury *by reason of failure to comply with the statute governing such
sales*" and rejecting plaintiff's *de facto* merger argument because "[i]n the case before us
the statute has been complied with") (emphasis added); *Spring Real Estate*, 2013 WL
6916277, at *5 (Del. Ch.) ("Typically, Delaware does not recognize statutorily compliant
asset sales as de facto mergers.") (dismissing complaint on Rule 12(b)(6) motion in part
because "Spring Capital did not allege that RayTrans failed to comply with the relevant
asset transfer statute").

Here, LBHI does not allege the transaction failed to comply with Delaware's
asset-sale statute in any respect. Again, the direct issuance of the purchaser's stock to the
seller's shareholders that was pivotal in *Drug* did not occur here. LBHI does not allege
any other type of statutory non-compliance. *See Maine State Retirement Sys.*, 2011 WL
1765509, at *8 (C.D. Cal.) (granting motion to dismiss successor liability claim under

14

Delaware law in part because "the SAC does not allege that the asset sale failed to comply with the relevant Delaware statutes governing such a sale").

### B.    The elements of mere continuation are not alleged.

Lower Delaware courts[4], as well as the District of Delaware, have recognized mere continuation as a basis for successor liability, but "narrowly construed" the doctrine to require "the new company be the same legal entity as the old company." *Magnolia's at Bethany*, 2011 WL 4826106, at *3 (Del. Super. Ct.); *see also Ross*, 2008 WL 4899226, at *4 (Del. Super. Ct.); *Spring Real Estate*, 2013 WL 6916277, at *5 (Del. Ch.); *Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535, 542 (D. Del. 1988). In other words, the buyer "must be the same legal person" as the seller "having a continued legal existence under a new name." *Fountain*, 1988 WL 40019, at *9 (Del. Super. Ct.) (quoting *Fehl*, 433 F. Supp. at 946). "The test is not the continuation of the business operation; rather, it is the continuation of the corporate entity." *Id*. The theory is "appropriate only where the new entity is so dominated and controlled by the old company that the separate existence must be disregarded." *Magnolia's at Bethany*, 2011 WL 4826106, at *3 (Del. Super. Ct.); *see also Ross*, 2008 WL 4899226, at *4 (Del. Super. Ct.)

---

[4] The Delaware Supreme Court has yet to consider whether the mere continuation form of successor liability should be recognized in Delaware. "In the absence of authoritative law from the state's highest court, we must either (1) predict how [such court] . . . would resolve the state law question, or, if state law is so uncertain that we can make no reasonable prediction, (2) certify the question . . . for a definitive resolution." *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 210 (2d Cir. 2006) (quoting *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005)). "In attempting to ascertain how [such court] . . . would rule, we give 'due regard to the rulings of other state courts.' " *Id*. (quoting in part *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 402 (2d Cir. 2000)).

The mere continuation theory aims to capture those situations where the asset sale amounted to a reorganization of the seller designed to evade creditors. *See Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535, 542 (D. Del. 1988) (focusing on whether the transaction was a "mere reorganization or change of corporate name" by the seller); *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 572 (9th Cir. 2012) (applying Washington law) ("The nub of the inquiry is whether the purchaser represents merely a 'new hat' for the seller.") (cleaned up); *Cargo Partner AG v. Albatrans, Inc.*, 207 F. Supp. 2d 86, 95 (S.D.N.Y. 2002) ("A continuation envisions a common identity of directors, stockholders, and the existence of only one corporation at the completion of the transfer. What it accomplishes is something in the nature of a corporate reorganization, rather than a mere sale.") (cleaned up) (quoting *Ladjevardian v. Laidlaw–Coggeshall, Inc.,* 431 F. Supp. 834, 839 (S.D.N.Y. 1977) (applying New York law)).

### 1.    There is no identity of ownership between iMortgage and loanDepot.

The factual allegations in LBHI's Complaint do not support a reasonable inference that loanDepot is the same legal entity as iMortgage. loanDepot was formed in 2009, approximately four years before the asset purchase [Ex. 2 (printout from Delaware Division of Corporations showing the date of loanDepot's formation)]. This is not a situation where the acquiring entity was created as part of the transaction or a defunct shell used; loanDepot was an existing, unrelated business with substantial operations seeking to expand through an acquisition. *See Magnolia's at Bethany*, 2011 WL 4826106, at *3 (Del. Super. Ct.) (dismissing mere continuation claim on Rule 12(b)(6)

motion in part because the seller and buyer "were two unrelated entities" at the time of the transaction).

Confirming they are separate entities, iMortgage and loanDepot have different owners. As reflected in the LLC Agreement, loanDepot has numerous other unit holders besides iMortgage's shareholders. [LLC Agreement, LoanDepot.com, LLC Schedule of Unitholders (last schedule to document)] *See Elmer*, 698 F. Supp. at 542 (holding "[t]he Heyden Newport—HDN transaction was more than a mere reorganization or change of corporate name" because "HDN had different owners than Heyden Newport"); *Spring Real Estate*, 2013 WL 6916277, at *5 (Del. Ch.) (dismissing mere continuation claim on Rule 12(b)(6) motion in part because "there is no allegation that Echo/RT shared the same . . . members (or stockholders) with Raytrans").

### 2. There is no identity of control between iMortgage and loanDepot.

As further reflected in the LLC Agreement, the iMortgage Division was "a new separate division of" loanDepot comprised of the purchased "iMortgage Assets." [LCA Agreement at 1 & 12 (see definition of "iMortgage Assets")] The LLC Agreement expressly states the iMortgage shareholders "shall not be deemed officers or Directors by virtue of being on the iMortgage Committee." [*Id*., at 61 § 5.8 (see "Management of iMortgage Division")]

The foregoing aligns with LBHI's allegations in the Complaint. LBHI alleges iMortgage's officers were appointed equivalent positions within the "Defendant-Successor Imortgage division." [Doc. 1 ¶ 51] There is no allegation any of them were

appointed to company-wide officer positions at loanDepot or to loanDepot's Board. LBHI's allegations concede what is made clear in the LLC Agreement: that iMortgage's principals have no entity-wide control at loanDepot. They went from total entity control at iMortgage to no entity control at loanDepot. Positions within a discrete business unit of loanDepot is not control over loanDepot as an entity as required for mere continuation liability.

LBHI misconstrues mere continuation as only requiring continuation of the seller's business. The buyer almost always continues the seller's business after the sale. It is standard to hire the seller's employees, operate out of the same locations, and use the same business name, website domain, and telephone numbers. The seller frequently receives an equity interest in the buyer as part of the sale which incentivizes the seller's assistance in transferring the business's goodwill to the buyer. Holding that continuation of the seller's business is sufficient for mere successor liability would eviscerate the general rule that the buyer takes the assets free of the seller's liabilities.

Mere continuation requires an identity of ownership and control between the selling and buying entities such that they are properly treated as one and the same entity for liability purposes. LBHI has not alleged such an identity here. Rather, it has alleged a fairly typical asset sale involving an equity component of consideration and continuing non-controlling roles for the seller's principals with the buyer. This does not render iMortgage and loanDepot one and the same entity.

### 3. iMortgage was not dissolved as an entity.

Mere continuation liability requires that there only be "one corporation at the completion of the transfer." *Spring Real Estate*, 2013 WL 6916277, at *5 (Del. Ch.) (quoting *Magnolia's at Bethany*, 2011 WL 4826106, at *3 (Del. Super. Ct.)). This requires dissolution of the seller. Here, the Complaint alleges that iMortgage "sought to dissolve" after the transaction [Doc. 1 ¶ 46], not that it actually did so, which is insufficient. *See Cargo Partner*, 207 F. Supp. 2d at 96 ("The Complaint does not allege that Chase Leavitt has dissolved, or that it is to be dissolved as part of the transaction. Accordingly, the Complaint fails to allege facts sufficient to support a finding of successor liability under the 'mere continuation' exception as defined by New York law.").

### C. LBHI's conclusory fraud allegation does not satisfy Rule 9(b)'s heightened pleading standard.

Regardless of the successor liability theory pursued, Delaware courts are reluctant to find successor liability in the absence of fraud. *See Maine State Retirement Sys.*, 2011 WL 1765509, at *3 (C.D. Cal.) (holding an intent to defraud creditors is an essential element of a *de facto* merger under Delaware law; *Heilbrunn v. Sun Chem. Corp.*, 146 A.2d 757, 760 (Del. Ch. 1958) ("Plaintiffs may not complain of a corporate purchase made in conformity with Delaware statutory authority unless such transaction is fraudulent as having been carried out for a grossly inadequate consideration or otherwise made in bad faith."), *aff'd*, 150 A.2d 755 (Del. 1959); Jon T. Hirshoff, John H. Lawrence Jr., and Daniel H. Peters, *Successor Liability in Asset Acquisition*

*Transactions*, ABA M&A Lawyers' Library, January 12, 2019, at 18 (noting "the

Delaware successor liability doctrines have rarely been applied absent fraud")

(memorandum by subcommittee of the M&A Committee of the Business Law Section

of the ABA).

Recognizing this factor's importance, LBHI makes a vague and conclusory fraud

allegation: "[t]he Acquisition was structured to disadvantage Defendant-Seller's

creditors, such as LBHI, including, for example, lack of adequate cash consideration for

Defendant-Seller to satisfy obligations to its creditors." [Doc. 1 ¶ 51] Trying to sidestep

Rule 9(b), LBHI avoids the word "fraud," but that is plainly the allegation—that

defendants designed and engineered the transaction to evade iMortgage's creditors by

leaving insufficient cash to pay them. This is not misrepresentation-based fraud, but the

type of creditor fraud involved in an actual fraudulent transfer claim and an alter ego or

veil-piercing claim, both of which must be pleaded with particularity. *See Atlanta

Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987) (holding Rule

9(b)'s heightened pleading standard applies to claim for actual fraudulent transfer); *In re

Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (same); *Apace Commc'n, Ltd. Burke*,

522 F. Supp. 2d 509, 522 (W.D.N.Y. 2007) (same for fraud component of an alter ego

or veil-piercing claim); *Bravado Int'l Group Merchandising Serv., Inc. v. Ninna, Inc.*,

655 F. Supp. 2d 177, 196 (E.D.N.Y. 2009) (same).

Having alleged creditor fraud, LBHI must plead it with particularity, which LBHI fails to do. LBHI fails to allege facts from which it can be reasonably inferred that iMortgage and loanDepot had a meeting of the minds to defraud iMortgage's creditors and purposefully structured the transaction to accomplish that goal. *See Allstate*, 842 F. Supp. 2d at 1234 (granting motion to dismiss successor liability claim premised on *de facto* merger in part because of "Allstate's failure to plead . . . fraudulent intent with respect to the asset sales"). LBHI does not allege the who, what, where, and when of this supposed meeting of the minds and its implementation. For loanDepot to have had such a fraudulent intent, knowledge of LBHI's massive contractual indemnification claim was necessary, but there is no allegation that loanDepot had actual or constructive knowledge of this years-off claim back in 2013. Nor does LBHI allege that iMortgage anticipated LBHI's claim on the horizon. LBHI's threadbare creditor-fraud allegation does not satisfy Rule 9(b)'s heightened pleading standard.

## Conclusion

LBHI should not be allowed to sweep loanDepot into this sprawling litigation based on inadequate successor-liability allegations. The Complaint should be dismissed as against loanDepot for failure to state a claim upon which relief can be granted.

RESPECTFULLY SUBMITTED this 15 day of August, 2019.

**HIENTON & CURRY, PLLC**

By: /s/ Christopher A. LaVoy

Christopher A. LaVoy
5045 N. 12th Street, Suite 110
Phoenix, Arizona 85014
clavoy@hclawgroup.com
Telephone: (602) 254-9900
Facsimile: (602) 293-3278
*Attorneys for loanDepot.com, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants for this case.

By: /s/ Berlinda Corpora