**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. |
| Debtors. | 08-13555 (SCC) |
| | |
| LEHMAN BROTHERS HOLDINGS INC., | |
| Plaintiff, | Adversary Proceeding |
| | No. 16-01019 (SCC) |
| - against - | |
| 1ST ADVANTAGE MORTGAGE, L.L.C. *et al.*, | |
| Defendants. | |
| | |
| LEHMAN BROTHERS HOLDINGS INC., | |
| Plaintiff, | Adversary Proceeding |
| | No. 18-01839 (SCC) |
| - against - | |
| IMORTGAGE.COM, INC., and LOANDEPOT.COM, LLC, | |
| Defendants. | |

**MEMORANDUM OF LAW OF PLAINTIFF LEHMAN BROTHERS HOLDINGS INC.**
**IN OPPOSITION TO LOANDEPOT'S MOTION TO DISMISS THE RMBS**
**COMPLAINT PURSUANT TO RULE 12(B)(6)**

# TABLE OF CONTENTS

**Pages**

I.    PRELIMINARY STATEMENT ..................................................................... 1

FACTUAL BACKGROUND ............................................................................. 3

    A.  Allegations in the Complaint. ......................................................... 3

    B.  loanDepot's Unverified "New Facts" ............................................. 5

ARGUMENT ..................................................................................................... 5

I.    MOTION TO DISMISS STANDARD.................................................... 5

    A.  The Court Must Accept the Complaint's Allegations as True...................... 5

    B.  Neither the LLC Agreement Nor the Additional Unverified "Facts" Offered by loanDepot May Be Considered................................................... 6

    C.  The Choice of Law Analysis Is Not Meaningful as There Are Few, if Any, Substantive Differences in the Application of New York or Delaware Law. .............. 9

II.   LBHI HAS ADEQUATELY ALLEGED THE ELEMENTS OF DE FACTO MERGER ........................................................................... 11

    A.  Courts Focus on the Substance of the Transaction Under Delaware Law.................. 11

    B.  LBHI's Allegations Permit the Court to Draw a Reasonable Inference That loanDepot Acquired Substantially All Assets and Liabilities of iMortgage............... 12

    C.  LBHI Alleges That loanDepot Units Were Issued to iMortgage Shareholders.......... 15

    D.  LBHI Need Not Affirmatively Allege Non-Compliance With Delaware's Asset-Sale Statute. ................................................................... 16

III.  LBHI HAS ADEQUATELY ALLEGED MERE CONTINUATION ............................ 18

    A.  The Complaint Alleges Continuity of Ownership. ....................................... 19

    B.  The Complaint Alleges Common Directors. ............................................. 20

    C.  The Court Can Infer That iMortgage Dissolved After the Acquisition. ..................... 22

IV.   LBHI HAS ADEQUATELY PLEADED THAT THE ACQUISITION WAS STRUCTURED TO DISADVANTAGE IMORTGAGE'S CREDITORS...................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AJZN, Inc. v. Yu,*
No. CIV.A. 13-149 GMS, 2015 WL 331937 (D. Del. Jan. 26, 2015) ............................... 12, 18

*Allstate Ins. Co. v. Countrywide Financial Corp.,*
842 F. Supp. 2d 1216 (C.D. Cal. 2012) .................................................................. 23

*Apace Communications, Ltd. v. Burke,*
522 F. Supp. 2d 509 ............................................................................................. 23

*Arnold Graphics Indus., Inc. v. Independent Agent Ctr., Inc.,*
775 F.2d 38 (2d Cir. 1985) .............................................................................. 11, 16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................ 6

*Atlanta Shipping Corp., Inc. v. Chem. Bank,*
818 F.2d 240 (2d Cir. 1987) .................................................................................. 23

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................ 6

*Broder v. Cablevision Sys. Corp.,*
418 F.3d 187 (2d Cir. 2005) .................................................................................... 7

*Cargo Partner AG v. Albatrans, Inc.,*
207 F. Supp. 2d 86 (S.D.N.Y. 2002) ..................................................................... 22

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002) .................................................................................... 7

*Corp. Prop. Assocs. 8, L.P. v. Amersig Graphics, Inc.,*
No. CIV. A. 13241, 1994 WL 148269, at *5 (Del. Ch. Mar. 31, 1994) ........................... 15, 19

*Diaz v. South Bend Lathe Inc.,*
707 F. Supp. 97 (E.D.N.Y. 1989) .................................................................... 11, 13

*Drug, Inc. v. Hunt,*
168 A. 87 (Del. 1933) .................................................................. 10, 11, 13, 15

*Elmer v. Tenneco Resins, Inc.,*
698 F. Supp. 535 (D. Del. 1988) .................................................................... 19, 20

iii

*Energy Intelligence Grp., Inc. v. Cowen & Co., LLC*,
No. 14 CIV. 3789 (NRB), 2016 WL 3939747 (S.D.N.Y. July 15, 2016) .................................. 9

*Fehl v. S. W. C. Corp.*,
433 F. Supp. 939 (D. Del. 1977).................................................................................... 11, 18, 22

*Fidanque v. Am. Maracaibo Co.*,
92 A.2d 311, 315-16 (Del. Ch. 1952) ......................................................................... 9, 10, 11

*Gimbel v. Signal Cos.*,
316 A.2d 599 (Del. Ch.).................................................................................................... 13

*Global Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006)................................................................................................. 7

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016)............................................................................................ 5, 7, 8

*Bravado Int'l Group Merchandising Services, Inc. v. Ninna, Inc.*,
655 F. Supp. 2d 177 (E.D.N.Y. 2009) ................................................................................ 23

*Hariton v. Arco Electronics, Inc.*,
188 A.2d 123 (Del. 1963) ........................................................................................... 17, 18

*Heilbrun v. Sun Chem. Corp.*,
150 A.2d 755 (Del. 1959) ........................................................................................... 17, 18

*In re Allstate Ins. Co. (Stolarz)*,
81 N.Y.2d 219 (1993) ......................................................................................................... 9

*In re Gen. Motors Class H Shareholders Litig.*,
734 A.2d 611 (Del. Ch. 1999)........................................................................................... 12

*In re Manhattan Investment Fund Ltd.*,
310 B.R. 500 (Bankr.S.D.N.Y.2002).................................................................................. 23

*In re McKesson HBOC, Inc. Secs. Litig.*,
126 F.Supp.2d 1248 (N.D. Cal 2000) ........................................................................... 17, 22

*In re Tronox Inc.*,
429 B.R. 73 (Bankr. S.D.N.Y. 2010) .................................................................................. 23

*In re: EZCorp, Inc. Sec. Litigations*,
181 F. Supp. 3d 197 (S.D.N.Y. 2016)....................................................................... 6, 15, 22

*Louisiana Mun. Police Employees' Ret. Sys. v. Crawford*,
918 A.2d 1172 (Del. Ch. 2007)......................................................................................... 16

iv

*Magnolia's at Bethany LLC v. Artesian Consulting Engineers Inc.*,
   2011 WL 4826106 (Del. Super. 2011)........................................................ 14, 19, 20

*Maine State Retirement Sys. v. Countrywide Fin. Corp.*,
   2011 WL 1765509, *8 (C.D. Cal. April 20, 2011) ..................................... 17

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
   40 Misc. 3d 643 (Sup. Ct. 2013)............................................. 9, 10, 11, 18

*Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*,
   723 F.3d 192 (2d Cir. 2013).................................................................... 6

*Orzeck v. Englehart*,
   195 A.2d 375 (Del. Super. 1963) .......................................................... 17, 22

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974) ............................................................................... 6

*Spring Real Estate, LLC v. Echo/RT Holdings, LLC*,
   No. CIV. A 7994, 2013 WL 6916277 (Del. Ch. 2013).......................... 14, 17, 18, 19

*Time Warner Cable, Inc. v. Networks Grp., LLC*,
   No. 09 CIV 10059 DLC, 2010 WL 3563111 (S.D.N.Y. Sept. 9, 2010) ........................... 12, 15

*Walker v. Schult*,
   717 F.3d 119 (2d Cir. 2013).................................................................... 6

*WD Encore Software, LLC v. Software MacKiev Co.*,
   No. CV 16-11490-WGY, 2017 WL 3317294 (D. Mass. Aug. 3, 2017).................................. 20

*Weinreb v. Xerox Bus. Servs., LLC Healthand Welfare Plan*,
   323 F. Supp. 3d 501 (S.D.N.Y. 2018)..................................................... 5

*Xperex Corp. v. Viasystems Techs. Corp., LLC*,
   No. CIV.A. 20582-NC, 2004 WL 3053649 (Del. Ch. July 22, 2004) ................... 10, 11, 12, 14

**Statutes**

Del. Code Ann. tit. 8, § 271 ...................................................................... 13

**Rules**

Fed. R. Civ. P. 8(a)(2)............................................................................... 6, 23

Fed. R. Civ. P. 9(b) ................................................................................. 22, 23

Fed. R. Civ. P. 56.................................................................................... 8

Plaintiff Lehman Brothers Holdings Inc. ("LBHI," "Plan Administrator," or "Plaintiff"), the Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), respectfully submits this Memorandum of Law in Opposition to loanDepot.com, LLC's ("loanDepot" or "Defendant-Successor") Motion to Dismiss the Complaint  pursuant to Fed. R. Civ. P. 12(b)(6), made applicable by Bankruptcy Rule 7012(b) [Dkt. No. 21] (the "Motion").[1]

A motion to dismiss may only be granted if taking all the allegations in the complaint as true, there is still no cause of action available to the plaintiff.

## I.    PRELIMINARY STATEMENT

In the Motion, loanDepot contends as a matter of law that the Plan Administrator can prove no set of facts that would entitle it to indemnification for $27,602,805 million in losses on defective loans originated by iMortgage.com, Inc. ("iMortgage" or "Defendant-Seller") prior to loanDepot's purchase of substantially all the assets and operations of iMortgage.  loanDepot argues that it is immune from liability through the form of an asset purchase transaction.  To achieve that extraordinary outcome on a motion to dismiss, loanDepot labors to avoid referencing applicable case law that focuses on the substance of the transaction at issue, while injecting multiple new "facts" not contained in the Complaint, none of which have any merit, at least on a motion to dismiss.

As a preliminary matter, loanDepot argues that this Court need only consider Delaware law under a New York choice-of-law analysis.  Presumably because loanDepot thinks Delaware law provides an advantage, the Motion relies on case law that concludes New York and Delaware law differ when applying de facto merger and similar doctrines, warranting application of

---

[1] Undefined capitalized terms are defined in the Complaint [Dkt. No. 1].

1

Delaware law here.  However, the Motion ultimately ignores that under the law of either state, the doctrines at issue are equitable ones and turn on the particular facts of a case and, thus, are not the proper foundation of a motion to dismiss.  Indeed, when the issue is whether creditors have grounds to seek recovery against alleged successors, the laws of New York and Delaware are substantially similar as both scrutinize transactions to determine if they were structured to "achieve mischief" at the expense of creditors.

loanDepot argues that the de facto merger doctrine mandates dismissal of any complaint where there is an asset sale that does not include an express assumption of liabilities.  In other words, loanDepot contends that the mere form of the asset purchase or other acquisition agreement will shield the acquirer from liability.  That is simply not the law.  Courts are permitted to draw reasonable inferences from the facts in the Complaint to conclude, for purposes of a motion to dismiss, that a defendant structured a particular transaction solely and superficially to avoid liability.  And the Complaint properly alleges that the transaction resulted in the original shareholders of the acquired entity becoming equity holders in loanDepot.  Finally, the Complaint need not allege a violation of Delaware statutory corporate law in order to avoid dismissal.  Taking as true the facts as pleaded, they are sufficient at this stage to establish that loanDepot may be liable under the de facto merger doctrine.

The Complaint also properly supports a finding that loanDepot is a mere continuation of iMortgage.  Such a claim requires that the Complaint assert a "common identity" of officers, directors, or stockholders, and the existence of only one corporation at the completion of the transfer of assets.  As the Complaint is sufficient at this stage to establish a claim of mere continuation, loanDepot attempts to improperly inject its own facts not found within the

Complaint. However, the facts *alleged in the Complaint* are sufficient to sustain the Plan Administrator's claims.

Finally, loanDepot argues that the Complaint must also meet the higher standards of a fraud pleading, but the cases cited by movant do not place such a burden on a creditor seeking to invoke either of the de facto merger or mere continuation doctrines. In fact, the Complaint provides substantial allegations that loanDepot effectively continued as iMortgage, leaving the iMortgage rump denuded of assets and unable to satisfy creditors' claims. Thus, the Acquisition was designed to disadvantage creditors such as the Plan Administrator.

## FACTUAL BACKGROUND

### A. Allegations in the Complaint.

The Court is familiar with the background of these coordinated RMBS indemnification actions. As to loanDepot's role, its predecessor entity, iMortgage, sold loans to LBHI or Lehman Brothers Bank pursuant to a Loan Purchase Agreement, which incorporates the Seller's Guide, under which iMortgage, as seller, assumed indemnification obligations. LBHI seeks to enforce iMortgage's indemnification obligations as a result of damages and costs it incurred through LBHI's settlement with RMBS Trustees. *See* Order Estimating Allowed Claim Pursuant to RMBS Settlement, dated March 15, 2018 [No. 08-13555, Dkt. No. 57785].

loanDepot acquired iMortgage in or around 2013 (the "Acquisition"). Compl. ¶ 42; Mot. at 3. LBHI claims that, as iMortgage's successor, loanDepot is liable for iMortgage's indemnification obligations. Compl. ¶ 53. In its Complaint, LBHI alleges that loanDepot is a mere continuation of iMortgage, and loanDepot's purchase of iMortgage was a de facto merger of the two companies. Compl. ¶ 52.

For purposes of this Motion, it is undisputed that in the Acquisition, loanDepot "acquired substantially all of [iMortgage's] assets used in or necessary for the operation of [iMortgage's]

3

business, including [its] goodwill and intellectual property." Compl. ¶ 42.   iMortgage's

shareholders and loanDepot agreed that "in connection with the Acquisition," iMortgage's

"shareholders were admitted as members and issued units in" loanDepot. Compl. ¶ 43.  loanDepot

assumed iMortgage's "obligations and liabilities for certain agreements and contracts that were

ordinarily necessary for the continuation of [iMortgage's] business operations. Compl. ¶ 46.

loanDepot agreed to make iMortgage's "employees offers of employment on substantially the

same terms and conditions on which the employees had been employed" by iMortgage. Compl. ¶

48. As a result, iMortgage's President, Chief Operating Officer, and Executive Vice President of

Secondary Marketing assumed the same titles and similar position within a division of loanDepot.

Compl. ¶ 49. As a part of the Acquisition, loanDepot and iMortgage "sought to dissolve

Defendant-Seller after having transferred its assets and business operations to Defendant-

Successor." Compl. ¶ 44.

    After the Acquisition, iMortgage "no longer had any of the assets, employees, offices,

phone lines, websites, business relationships, or credit facilities required to do business, and its

business operations promptly ceased following the Acquisition." Compl. ¶ 45. loanDepot

continued the "enterprise under the 'iMortgage' trade name, including continuation of

management, personnel, physical location, intellectual property, and general business operations."

Compl. ¶ 47. For example, loanDepot operates one or more branches at iMortgage's former

locations, uses one or more of its former fax and phone numbers, and uses its former web address

and email domain name. Compl. ¶ 50.  Given the continuity of enterprise and the intent to dissolve

iMortgage after stripping it of assets, the Acquisition was "structured to disadvantage

[iMortgage's] creditors, such as LBHI, including, for example, lack of adequate cash consideration

for [iMortgage] to satisfy obligations to its creditors. Compl. ¶ 51.

### B. loanDepot's Unverified "New Facts"

The Motion does not simply challenge the Complaint based on its allegations. Rather, movant heavily relies on a document entitled "Third Amended and Restated Limited Liability Company Agreement" (the, "LLC Agreement") purportedly between loanDepot and iMortgage. Mot. at 1-5. This Court should reject loanDepot's attempts to insert a number of new "facts" beyond the four corners of the Complaint.

## ARGUMENT

Viewing the allegations in the light most favorable to Plaintiff, as the Court must do, the merger between loanDepot and iMortgage resulted in a continuation of iMortgage's business— operations, employees, directors, name, and goodwill. Ownership interest was transferred to iMortgage shareholders, and iMortgage's owners became owners of loanDepot. The Complaint properly sets forth that the Acquisition was structured to disadvantage iMortgage's creditors. The Complaint's allegations, which the Court must view in the light *most* favorable to Plaintiff, sufficient to establish for pleading purposes claims for relief under the de facto merger and mere continuation theories of successor liability. Finally, loanDepot's argument that the Acquisition complies with the statutory requirements for an asset sale, alleges facts well beyond the scope of the Complaint, does not immunize loanDepot from de facto merger and mere continuation claims.

## I.    MOTION TO DISMISS STANDARD

### A. The Court Must Accept the Complaint's Allegations as True.

A Rule 12(b)(6) motion "challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "In considering a Rule 12(b)(6) motion, the Court must accept as true all [non-conclusory] factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff." *Weinreb v. Xerox Bus. Servs., LLC Healthand Welfare Plan*, 323 F. Supp. 3d 501, 510 (S.D.N.Y.

5

2018). The factual allegations must be sufficient to "raise a reasonable expectation that discovery will reveal evidence" of actionable conduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).[2]

Fed. R. Civ. P. 8(a)(2) requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See also Twombly*, 550 U.S. at 556 (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). On a motion to dismiss "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re: EZCorp, Inc. Sec. Litigations*, 181 F. Supp. 3d 197, 205 (S.D.N.Y. 2016) ("*In re: EZCorp*") (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotations and citation omitted).

## B.  Neither the LLC Agreement Nor the Additional Unverified "Facts" Offered by loanDepot May Be Considered.

The Court's review and determination of the Motion to dismiss for failure to state a claim must be limited to the four corners of the Complaint. Because loanDepot—and not the Plan Administrator—has heavily relied on a LLC Agreement purportedly between loanDepot and iMortgage (and on loanDepot's speculation about what that agreement means), the Court should deny the Motion.[3]

---

[2] Under Rule 12(b)(6), a plaintiff must provide sufficient facts that, if "accepted as true, . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible on its face, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

[3] loanDepot has not even provided entire the LLC Agreement, but has nevertheless asked the Court to consider the document. In fact, loanDepot included only limited excerpts and self-serving characterizations of the agreement, notwithstanding the general bar to extrinsic evidence. The Court should not consider the agreement without reviewing the complete writing and relevant extrinsic evidence if and when the issue is properly raised. loanDepot does not cite any authority in support of its request for the Court to consider excerpted provisions of a contract. *See, e.g., Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202-03 (2d Cir. 2013).

On a Rule 12(b)(6) motion, the court, as a general matter, only considers a "narrow universe of materials" and does not "look beyond facts stated on the face of the complaint." *Goel, Ltd.*, 820 F.3d at 559 (internal quotation marks omitted) (the court may also consider "documents appended to the complaint or incorporated in the complaint by reference").  However, a narrow exception is permitted for documents "integral" to the complaint—"where the complaint relies heavily upon [the document's] terms and effect." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). *See also Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (the exception is recognized where the document contains "obligations upon which the plaintiff's complaint stands or falls"); *id.* at 156 ("Merely mentioning a document in the complaint will not satisfy this standard").[4]

In the Complaint, LBHI does not rely heavily on the LLC Agreement's "terms and effect"—in fact it is only mentioned once—nor does the claim stand or fall on the terms or obligations of the LLC Agreement. The successor liability allegations principally concern the continuity of ownership and operations between iMortgage and loanDepot.  LBHI's reference to the LLC Agreement is a factual assertion and effectively provides notice of evidence that would substantiate the allegation:  iMortgage's shareholders were admitted as members and issued units in loanDepot. *See* Compl. ¶ 43. The specific terms of the LLC Agreement are not central to the successor liability allegations, but consideration of the same by the Court prejudices LBHI as it would distort the applicable standard for a 12(b)(6) motion. Thus, loanDepot's assertions based on excerpts of the LLC Agreement amount to conclusory counterstatements that improperly inject fact issues into an otherwise legal analysis.

---

[4] *But c.f. Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) ("The contract language relied upon in both of [Plaintiff's] breach-of-contract claims, as it exists in the actual customer agreement, differs from the language alleged in the complaint.").

Even more egregious is loanDepot's repeated references to uncertified factual allegations that go well beyond the scope of the Complaint. These unsupported claims include:

- The equity consideration from the transaction was issued to iMortgage, and after which loanDepot units were distributed to iMortgage shareholders, Mot. at 4-5 (citing LLC Agreement);

- iMortgage's shareholders were admitted as members to loanDepot under the LLC Agreement, Mot. at 4-5;

- loanDepot has numerous other owners, Mot. at 2, 17 (relying on the LLC Agreement);

- The iMortgage Division of loanDepot is be managed by the iMortgage Committee comprised of certain iMortgage shareholders, Mot. at 4 (citing LLC Agreement);

- Members of the iMortgage Committee are not "deemed officers and Directors" of loanDepot because of their membership on the committee, Mot. at 4 (citing LLC Agreement);

- The iMortgage Committee is "subject to the authority and direction of the Board," Mot. at 4 (citing LLC Agreement);

- iMortgage owners have no entity control at loanDepot, Mot. at 18;

- The iMortgage Division was "a new separate division of" loanDepot comprised of the purchased "iMortgage Assets," Mot. at 4, 17 (citing LLC Agreement).

Even though a Rule 12(b)(6) motion "challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence," *Goel*, 820 F.3d at 559, movant ignores this law and instead offered unverified "facts" to contest the "substantive merits" of the allegations. A determination of the merits is reserved for summary judgment, pursuant to Fed. R. Civ. P. 56, "where both parties may conduct appropriate discovery and submit the additional supporting material," *Goel*, 820 F.3d at 558-59 (citations omitted). The Court should not consider the LLC Agreement but should only base its ruling on the face of the Complaint.

8

### C.    The Choice of Law Analysis Is Not Meaningful as There Are Few, if Any, Substantive Differences in the Application of New York or Delaware Law.

The Motion essentially presumes that Delaware law applies and does not analyze New York law.  A choice of law analysis, however, must first identify a conflict between the relevant jurisdictions.  *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (1993).  loanDepot did not compare the laws of New York—the Plan Administrator's domicile, the law governing the contractual indemnification claims, and the forum for the litigation—and Delaware, the state of formation for the merging parties.  Instead, the movant proceeded directly to an interest analysis relying on the "internal affairs doctrine" to conclude that Delaware law applies.  Mot. at 5-6.

While loanDepot relies on case law that concludes that Delaware and New York de facto merger laws differ, those cases fail to recognize that at their core both jurisdictions employ the identical "holistic" or "flexible" analysis that elevates substance of the at-issue transaction over its form.  "Delaware takes a holistic view of the transaction in weighing de facto merger, emphasizing that '[w]hether a particular transaction is in reality a merger or otherwise depends to a great extent on the circumstances surrounding each particular case and in determining the question all elements of the transaction must be considered."  *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 40 Misc. 3d 643, 651 (Sup. Ct. 2013) ("*MBIA*") (quoting *Fidanque v. Am. Maracaibo Co.*, 92 A.2d 311, 315-16 (Del. Ch. 1952)).  Similarly, New York law analyzes a claim of de facto merger "in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor."  *Id.* at 651 (citations omitted).[5]

---

[5] In fact, the cases that recognize "differences" in the formal de facto merger formulations in New York and Delaware reached their conclusions usually without considering the substantive, fact-based analysis of individual transactions.  S*ee, e.g., Energy Intelligence Grp., Inc. v. Cowen & Co., LLC*, No. 14 CIV. 3789 (NRB), 2016 WL 3939747, at *9 (S.D.N.Y. July 15, 2016).

Relying heavily on *Drug, Inc. v. Hunt*, 168 A. 87, 96 (Del. 1933), loanDepot recites its oft quoted "elements"[6] but never fully explains the application of the doctrine under Delaware law. Contrary to loanDepot's argument, under Delaware's "holistic view," *Drug, Inc.* is not an impediment to attack a sham transaction and to recognize it as a de facto merger. Delaware courts do not apply the *Drug, Inc.* elements in a vacuum; rather, "Delaware law holds a recognized concern for transactions that seek to shelter assets from creditors." *Xperex Corp. v. Viasystems Techs. Corp., LLC*, No. CIV.A. 20582-NC, 2004 WL 3053649, at *2 (Del. Ch. July 22, 2004) (citing *Fidanque v. American Maracaibo Co.*, 92 A.2d 311, 316 (Del.Ch.1952).

The *Xperex* decision is particularly informative. The court permitted a claim of de facto merger to proceed, even though it was undisputed that the elements derived from *Drug, Inc*. were not strictly met. *See id*.[7] The chancery court denied summary judgment and concluded that the transaction did "*not pass the smell test*," having assessed the substance of the transaction and the intent of its advocates (counter-defendants in the matter) in "orchestrating" the transaction on behalf of the transferee/successor. *See id.* at *2-3 (emphasis added). There, the defendant-advocates orchestrated the predecessor's demise and "reaped [its] benefits" through their own association with the predecessor. *Id.* at *3. Delaware law recognizes a particular "concern for transactions that seek to shelter assets from creditors."[8] *Id.* at *2. Clearly, the Delaware version of de facto merger is not a rote formula, as loanDepot would have the Court believe.

---

[6] "[W]here one corporation transfers all of its assets to another corporation, and payment is made in stock, issued by the transferee directly to the transferring corporation, in exchange for their stock in that corporation, the transferee agreeing to assume all of the debts and liabilities of the transferor." *Drug, Inc*, 168 A. at 96.

[7] In *Xperex*, at least three elements of the Drug Inc. test were absent: (1) there was no asset transfer directly from predecessor to successor, (2) stock was not issued directly to the successor's shareholders, and (3) successor did not agree to assume the predecessor's liabilities. 2004 WL 3053649, at *2

[8] The cases suggest that the courts scrutinize transactions when the claims of creditors, as opposed to shareholders, are at issue as shareholders have specific statutory protections. *See MBIA*, 40 Misc. 3d at 651.

Regardless of the applicable law, as set forth below the Complaint satisfies the requirements of for successor liability under the de facto.

## II.   LBHI HAS ADEQUATELY ALLEGED THE ELEMENTS OF DE FACTO MERGER

Generally, under Delaware law, "where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor, including those arising out of the former's tortious conduct." *Fehl v. S. W. C. Corp.*, 433 F. Supp. 939, 945 (D. Del. 1977). However, in a de facto merger, the transferee will be liable. *See Drug, Inc.*, 168 A. at 96 (affirming jury verdict and ruling that transaction constituted a de facto merger). New York law also recognizes the cause of action. *See Arnold Graphics Indus., Inc. v. Independent Agent Ctr., Inc.*, 775 F.2d 38, 42 (2d Cir. 1985).

### A.   Courts Focus on the Substance of the Transaction Under Delaware Law.

When applying the doctrine, courts of equity examine the substance of the transaction, not just the form, to determine whether a de facto merger has occurred. *See Xperex Corp.* 2004 WL 3053649, at *2 ("[T]his Court is one of equity and will not allow sham transactions to achieve mischief."); *MBIA*, 40 Misc. 3d at 651 ("Delaware takes a holistic view of the transaction in weighing de facto merger, emphasizing that '[w]hether a particular transaction is *in reality a merger* or otherwise depends to a great extent on the *circumstances surrounding each particular case and in determining the question all elements of the transaction must be considered*,'" (quoting *Fidanque*, 92 A.2d at 315-16 (emphasis added)). *See also Diaz v. South Bend Lathe Inc.*, 707 F. Supp. 97 (E.D.N.Y. 1989) (courts weigh all the factors as no single one is determinative).

Strict adherence to the elements derived from *Drug, Inc.* is not required to attack a transaction as a de facto merger. In *Xperex*, (1) there was no asset transfer directly from predecessor to successor, (2) stock was not issued directly to the successor's shareholders, and (3)

the successor did not agree to assume the predecessor's liabilities. 2004 WL 3053649, at *2. Yet the court denied judgment as a matter of law, seeing through an apparent sham transaction and identifying the potential "mischief": "Defendants seek to insulate their conduct behind a public sale of Imagicast's assets, but what comfort is the Court to gather from a 'public' sale that only Xperex (guided by Imagicast insiders) attended? The answer, at this stage of the litigation, is very little." *Id.*

loanDepot further argues that if the challenged transaction fell within a statute that permitted the form of the transaction, this court of equity's inquiry ends. That is simply not the law. While the transaction may conform to the requirements of an asset sale, the courts analyze not just the form, but the substance of such transactions when applying the de facto merger doctrine. *See Time Warner Cable, Inc. v. Networks Grp., LLC*, No. 09 CIV 10059 DLC, 2010 WL 3563111, at *7 (S.D.N.Y. Sept. 9, 2010) ("the absence of formalities is at the heart of the de facto merger exception"). The Court should reject loanDepot's attempt to avoid the necessary fact-specific analysis attendant to a de facto merger determination. A motion to dismiss at the initial pleading stage is entirely inappropriate.

### B.   LBHI's Allegations Permit the Court to Draw a Reasonable Inference That loanDepot Acquired Substantially All Assets and Liabilities of iMortgage

Plaintiff's allegation that loanDepot "acquired substantially all assets" satisfies the asset transfer element of a de facto merger. An allegation of a transfer of substantially all assets sufficiently supports a theory of de facto merger and defeat a motion to dismiss. *See AJZN, Inc. v. Yu*, No. CIV.A. 13-149 GMS, 2015 WL 331937, at *15-16 (D. Del. Jan. 26, 2015) (allegation that seller sold "substantially all of its assets"). Under Delaware law, courts view a transfer of "substantially all" assets as the functional equivalent of the transfer of "all" assets. *See In re Gen. Motors Class H Shareholders Litig.*, 734 A.2d 611, 623 (Del. Ch. 1999) (noting that Delaware

courts interpret "substantially all" [in Delaware's asset sale statute] using a "contextual approach" focusing on "the sale 'of assets quantitatively vital to the operation of the corporation" and whether the transaction "'substantially affects the existence and purpose of the corporation'") (quoting *Gimbel v. Signal Cos.*, 316 A.2d 599, 606 (Del. Ch.), *aff'd*, 316 A.2d 619 (Del. 1974)). *See also* Del. Code Ann. tit. 8, § 271 ("Every corporation may . . . sell, lease or exchange all or substantially all of its property and assets . . . .").

Here, the Complaint's allegation that loanDepot acquired "substantially all" of iMortgage's assets "used in or necessary for the operation of" iMortgage is, in the context of the Acquisition, the factual and functional equivalent of "all" assets—"assets quantitatively vital to the operation of the corporation."  Further, that iMortgage allegedly retained a trivial amount of assets after the Acquisition is consistent with Complaint's theory that the Acquisition was designed to leave insufficient sums to satisfy its creditors.   Moreover, iMortgage's bare technical corporate existence—a mere shell—is consistent with *Drug, Inc*.  *See Drug, Inc*. 168 A. at 96 (transferor was a "mere shell" with effectively no assets, despite corporate existence).  *See also Diaz*, 707 F. Supp. at 100 (a predecessor's continued existence in a "gossamer form" does not bar the application of the de facto merger doctrine).  In any event, the formalities of the Acquisition fail to disguise its substantive effect.

Furthermore, even loanDepot's allegations of the effects of the Acquisition, which are far outside the four corners of the Complaint do not support dismissal.  In *Xperex*, the Delaware Chancery Court faced similar factual arguments when considering application of the de facto merger doctrine.  The court denied summary judgment despite claims that the facts of that case made it inconsistent with *Drug, Inc.*:

> *Drug, Inc. v. Hunt,* in my opinion, did not set forth the only circumstances in which a Delaware corporation will be considered the successor of another corporate entity.

13

> Delaware law holds a recognized concern for transactions that seek to shelter assets
> from creditors. Moreover, this Court is one of equity and will not allow sham
> transactions to achieve mischief. I have concerns regarding the manner in which
> Xperex came to acquire Imagicast's assets and the inquiry necessary to allay these
> concerns turns on the intent of the individual counter-defendants-an issue I cannot
> resolve at this stage of the proceedings.

*Xperex*, 2004 WL 3053649 at *2 (footnote omitted).

loanDepot cites *Magnolia's at Bethany LLC v. Artesian Consulting Engineers Inc.*, 2011 WL 4826106, at *3 (Del. Super. Ct.) ("*Magnolia*") in an effort to demonstrate that a de facto merger cannot be established with a transfer of less than "all" assets. But in *Magnolia* the buyer only acquired "some" of the assets: specifically, the seller's uncompleted contracts and permits (and the liabilities thereto). *Id.* at 1. The plaintiff in *Magnolia* did not allege that all or even substantially all of the assets and liabilities were transferred. *Id.* at *3. Additionally, the *Magnolia* court expressly relied on the purchase agreement, which enumerated the limited transfer of assets and liability. *Id.* Here, the Complaint does not put the purchase agreement at issue.

loanDepot also relies on *Spring Real Estate, LLC v. Echo/RT Holdings, LLC*, No. CIV. A 7994, 2013 WL 6916277 (Del. Ch. 2013) ("*Spring Real Estate*"), but it too has minimal application to loanDepot's contention. The *Spring Real Estate* ruling is akin to a summary judgment decision as the court considered and almost exclusively relied on a purchase agreement, which was attached to the complaint, rather than on the complaint's allegations. Based on the agreement, not the allegations, the court ruled as a matter of law the buyer expressly did not assume the liability at issue, a default judgment, *id.* at *4, and did not acquire all or substantially all of the assets. *id.* at *3. On a motion to dismiss, this Court should not consider such evidence.

The Court may also draw reasonable inferences that any liabilities remaining with iMortgage after the acquisition were *de minimis* because, as with the assets acquired, loanDepot assumed liabilities for agreements and contracts that were necessary for iMortgage's business

14

operations.  Compl. ¶ 46. *See Corp. Prop. Assocs. 8, L.P. v. Amersig Graphics, Inc.*, No. CIV. A.

13241, 1994 WL 148269, at *5 (Del. Ch. Mar. 31, 1994) (denying a motion to dismiss because

"theories [of, de facto merger and continuation] exist . . .  even though [allegedly] defendants did

not expressly assume the[] liabilities").  *See also Time Warner Cable, Inc.*, 2010 WL 3563111, at

*7 (successor liability was well pled, under New York law, despite evidence that successor only

assumed some of predecessor's contractual liabilities).

### C.  LBHI Alleges That loanDepot Units Were Issued to iMortgage Shareholders.

Generally, in a de facto merger, "payment is made in stock, issued by the transferee directly

to the stockholders of the transferring corporation." *Drug, Inc.*, 168 A. at 96.  The Complaint

alleges that in connection with the Acquisition, iMortgage "shareholders were admitted as

members [of loanDepot] and issued units in [loanDepot]." Compl. ¶ 43. This allegation permits

the Court to reasonably infer that loanDepot units were issued directly to iMortgage shareholders.

LBHI's allegation that the issuance of loanDepot units was pursuant to an agreement, provides a

factual basis for the Court to draw that inference.  The allegation demonstrates that the Plan

Administrator is "entitled to offer evidence to support the claims." *In re: EZCorp*, 181 F. Supp.

3d at 205.  Additionally, because both courts take a holistic view in a de facto merger analysis, and

viewed in the light most favorable to Plaintiff, the Court should consider the transfer of equity

shares in the context of the Complaint's sham transaction theory. The Complaint alleges that the

issuance of units was structured to appear to be legal but had the effect of disadvantaging

iMortgage's creditors.

Recognizing that it cannot succeed on a motion to dismiss, loanDepot improperly relies on

the LLC Agreement to assert that the loanDepot units were not issued to iMortgage's shareholders.

Mot. at 4-5. In so doing, loanDepot drastically mischaracterizes the Complaint's allegation,

stating: "LBHI focuses on iMortgage's ensuing distribution of the loanDepot units to iMortgage's

shareholders, leading to their admission as members in loanDepot." Mot. at 11.  The Complaint

contains no allegation about the distribution of loanDepot units.  *See* Compl. ¶ 43.  Nor should the

Court consider the LLC Agreement in that regard.  Based on its plain language, the Complaint

alleges units were transferred to iMortgage shareholders.

Nevertheless, loanDepot contends that the Acquisition is not subject to challenge as a de

facto merger because the purported distribution of the units to iMortgage shareholders was not

illegal.  Mot. at 11-12.  But under the holistic view, the entirety of any transaction is examined,

*see Louisiana Mun. Police Employees' Ret. Sys. v. Crawford*, 918 A.2d 1172, 1191-92 (Del. Ch.

2007) ("*LAMPERS*"); *Arnold Graphics* 775 F.2d at 42 ("there is no requirement that all of the

events that are necessary to a finding of de facto merger occur at the same time").  Even

loanDepot's unverified statements would support the conclusion that the effect of the transaction

was to exchange equity in return for the shareholder's assets.

Lastly, the Complaint only discusses equity consideration.  There is no allegation

concerning a combination of cash and stock, contrary to loanDepot's assertion. Mot. at 11.  The

Complaint does allege a "lack of adequate cash" to satisfy iMortgage's obligations to its creditors,

an example of the structure of the sham Acquisition.  *See* Compl. ¶ 51.  But this allegation in no

way changes the allegation that loanDepot's units were eventually transferred to iMortgage

shareholders.  And, under the rationale of *LAMPERS*, 918 A.2d at 1191-92, the Court would not

be limited simply to the form of the transaction but would be able to determine if the substance of

the transaction was, in fact, consistent with the allegations in the Complaint.

### D. LBHI Need Not Affirmatively Allege Non-Compliance With Delaware's Asset-Sale Statute.

The Court can reasonably infer that the Acquisition does not comply with the asset-sale

statute because the Complaint's allegations make out a de facto merger claim.  A de facto merger

claim requires an allegation that "the sale was designed to disadvantage shareholders or creditors." *See In re McKesson HBOC, Inc. Secs. Litig.*, 126 F.Supp.2d 1248, 1277 (N.D. Cal 2000); *see Orzeck v. Englehart*, 195 A.2d 375, 378 (Del. Super. 1963). LBHI alleges that the transaction was "structured to disadvantage" iMortgage's creditors, Compl. ¶ 51, which, at the pleading stage, is consistent with non-conformity with Delaware statutory authority. *See Heilbrun v. Sun Chem. Corp.*, 150 A.2d 755, 760 (Del. 1959) (a plaintiff may not complain of "conformity with Delaware statutory authority unless such transaction is fraudulent . . . or otherwise made in bad faith."). In any event, any determination about compliance with the asset-sale statue is premature, and is properly made on a motion for summary judgment after discovery has been conducted. *See Hariton v. Arco Electronics, Inc.*, 188 A.2d 123, 124 (Del. 1963) (affirming summary judgment order dismissing de facto merger claim decided on "affidavits and documentary evidence").[9]

loanDepot does not cite any Delaware decision holding that failure to allege non-compliance with Delaware's asset-sale statute is fatal to a successor liability claim based on a de facto merger theory. *Maine State Retirement Sys. v. Countrywide Fin. Corp.*, on which loanDepot relies, is not to the contrary. 2011 WL 1765509, *8 (C.D. Cal. April 20, 2011) (applying Delaware law). There the court stated that non-compliance with the asset-sale statute was a "factor" considered by Delaware courts. *Id.* at 6. The court, in turn, cited no Delaware decision requiring a plaintiff pleading successor liability on a theory of de facto merger to allege non-compliance with the asset-sale statute. *See also Spring Real Estate*, 2013 WL 6916277, at *5 (the absence of an allegation pleading non-compliance with the statute was not essential to the ruling). [10]

---

[9] Unlike this Motion and the applicable standard of review, both *Hariton* and *Heilbrun* considered agreements extrinsic to the complaints' allegations. *See Hariton*, 188 A.2d at 124; *Heilbrun*, 150 A.2d at 756.

[10] As discussed above, the court's ruling actually relied on the express terms of the purchase agreement, not on the allegations, and thus considered extrinsic evidence, which is not permitted here.

Finally, under Delaware law, whether compliance with the asset sale statute was achieved is relevant to shareholder considerations, not those of creditors, as here, where LBHI alleges that creditors were disadvantaged.  Neither *Hariton* nor *Heilbrun*, relied upon by movant, discuss successor liability.  Instead they concern, *inter alia*, dissenting shareholders' claims regarding the distribution of a purchasing corporation's shares. *Hariton*, 188 A.2d at 124; *Heilbrun*, 150 A.2d at 756.  "[T]he inquiry in both *Hariton* and *Heilbrunn* necessarily focused on whether the transaction complied with the asset sale statute because, if so, plaintiffs had no right to the damages sought." *MBIA*, 40 Misc. 3d at 652 ("While compliance with statutory formalities was a relevant inquiry in those analyses, it is not relevant to the instant analysis, where the claim is not brought by dissenting shareholders . . . .").

### III.   LBHI HAS ADEQUATELY ALLEGED MERE CONTINUATION

Viewed in the light most favorable to Plaintiff, the Complaint's allegations permit the Court to reasonably infer that loanDepot is a mere continuation of iMortgage. "[W]here an avoidance of liability would be unjust, a purported sale of assets for cash or other consideration may be found to transfer liabilities of the predecessor corporation." *Fehl*, 433 F. Supp. at 945. Successor liability based on a mere continuation theory requires a "common identity" of officers, directors, or stockholders, and the existence of only one corporation at the completion of the transfer of assets. *Spring Real Estate*, 2013 WL 6916277, at *5; *Fehl,* 433 F. Supp. at 948. An allegation of overlapping officers, directors, or stockholders will suffice at the pleading stage. Mere continuation theory recognizes the transaction is in the nature of a corporate reorganization, rather than a mere sale. *Spring Real Estate*, 2013 WL 6916277, at *5.

Delaware courts considering allegations of mere continuation recognize the continuity of business operations as a basis to deny motions to dismiss. In *AJZN, Inc*., 2015 WL 331937, at *16, the court denied a motion to dismiss where the alleged successor used the same assets, domain

name and websites, retained some employees, and held itself out to the public as a continuation of the business conducted by the predecessor. *See also Corp. Prop. Assocs. 8, L.P.*, 1994 WL 148269, at \*5 (denying motion to dismiss as successor carried on predecessor's business with the same customers, and substantially all of the employees and management). *But see Spring Real Estate*, 2013 WL 6916277, at \*5 (mere continuation theory contemplates "continuation of 'the same legal entity,' not just a continuation of the same business in which the seller of the assets engaged.").[11]

Here, LBHI has alleged that loanDepot continued to conduct the same business as iMortgage, using the same assets, domain name and websites, trade name, management, intellectual property, physical location, and retained some employees. Compl. ¶¶ 47-50. The Complaint alleges that loanDepot held itself out to the public as a continuation of the business conducted by iMortgage. Compl. ¶¶ 47, 50.

### A.    The Complaint Alleges Continuity of Ownership.

LBHI has adequately alleged continuity of ownership between iMortgage and loanDepot because shareholders of iMortgage became members of loanDepot. Compl. ¶ 43. The allegation is sufficient to draw a reasonable inference that iMortgage and loanDepot have overlapping ownership. An overlap of owners suffices to establish common identity of ownership, i.e., that the predecessor owners are owners in the successor entity. *See Spring Real Estate*, 2013 WL 6916277, at \*5 (suggesting that an allegation that the predecessor and successor shared some of the same officers, directors, or members would have been a sufficient allegation of continuity of ownership). The allegation is sufficient to draw a reasonable inference that there is overlapping ownership

---

[11] Also, loanDepot has asserted, based on a *dicta* in *Magnolia*, that mere continuation is "appropriate only where the new entity is so dominated and controlled by the old company that the separate existence must be disregarded." Mot. at 15 (citing *Magnolia*, 2011 WL 4826106, at \*3). *Magnolia* cites *Elmer*, but *Elmer* contains no such heightened standard, and merely restates the settled elements of the continuation theory. *See Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535, 542 (D. Del. 1988).

between iMortgage and loanDepot.  LBHI is entitled to discovery on the issue, as information within loanDepot's possession will reveal the extent of the continuity.

loanDepot's contention that LBHI has not established continuity of ownership relies on factual assertions and documents that are outside of the four corners of the Complaint.  Mot at 16-17.  First, there is no allegation, and none is needed, that loanDepot, as successor, was created as a part of the Acquisition.  Nor has LBHI alleged the date of loanDepot's formation.  Second, loanDepot's unsupported assertion that it "was an existing unrelated business with substantial operations seeking to expand through acquisition," Mot. at 16, is not in the Complaint.  On a motion to dismiss, whether loanDepot was an existing business with separate owners is not fatal to the continuation theory.  *C.f. Magnolia*, 2011 WL 4826106, at *3 (granting dismissal as the alleged predecessor and successor *remained* separate entities with separate owners, and the seller participated in the lawsuit at issue).  Moreover, the determination of the identities of the owners of loanDepot is appropriate on a motion for summary judgment after discovery.

Finally, loanDepot again improperly relies on the LLC Agreement to assert that loanDepot has numerous "other holders."  Mot. at 17.[12]  This unverified fact is not within the four corners of the Complaint, and the Court should not consider it.  Further, this assertion does not prevent the Court from drawing a reasonable inference that continuity of ownership existed.

### B.    The Complaint Alleges Common Directors.

Commonality of some officers of the predecessor entity is sufficient to defeat a dispositive motion with respect to a theory of successor liability.  *See WD Encore Software, LLC v. Software MacKiev Co.*, No. CV 16-11490-WGY, 2017 WL 3317294, at *4 (D. Mass. Aug. 3, 2017) (under

---

[12] loanDepot also relies on *Elmer* but that case's procedural posture demonstrates LBHI's point.  *Elmer* is a summary judgment decision wherein the court relied on facts elicited in discovery to rule that the predecessor and successor had different owners.  *Elmer*, 698 F. Supp. at 542.

summary judgment standard, assertion that "key" employees subsequently worked at the successor after the acquisition, raised a genuine issue of material fact).  The allegation that former officers of iMortgage took similar roles in loanDepot's "iMortgage division" is sufficient for the Court to draw a reasonable inference that iMortgage directors became controlling officers at loanDepot. Specifically, the Complaint alleges that the former President and COO, controlling officers of iMortgage, held the same titles and similar positions at loanDepot. Compl. ¶ 49.  Because the Court must view this allegation in light most favorable to Plaintiff, it must not only accept the allegation as true, but must also accept the inference that at least the President and COO maintained positions that could affect and control loanDepot.

loanDepot's reliance on the LLC Agreement is, again, improper because it inserts a fact issue into a purely legal assessment. Mot. at 17.  First, the LLC Agreement cannot reasonably be the only evidence demonstrating iMortgage's former officers' roles at loanDepot. The extent to which iMortgage's former officers control loanDepot will be uncovered in discovery. Additionally, loanDepot's unsupported assertion that iMortgage shareholders "shall not be deemed officers or Directors by virtue of being on the iMortgage Committee," Mot. at 17, is based upon an-out of context portion of a document and begs the question of whether any shareholders, in fact, became officers or directors.

Finally, Plaintiff's allegations do not "concede" anything regarding the iMortgage principals' entity-wide control. Mot. at 18. Consistent with the entirety of the Motion, loanDepot attempts to distort the standard of review and to have the Court, improperly, review the allegations in the light most favorable to loanDepot—the *defendant*—and its extrinsic evidence. The allegation about iMortgage's directors presents a question of fact as to what extent the officers who controlled iMortgage assumed similar controlling roles at loanDepot.

### C.    The Court Can Infer That iMortgage Dissolved After the Acquisition.

Under the mere continuation theory, the predecessor entity must be dissolved in connection with the transaction such that only one corporation exists.  *Fehl*, 433 F. Supp. at 945-946.  LBHI has alleged that iMortgage sought to dissolve after the transfer of its assets to loanDepot. Compl. ¶ 44.  The allegation is sufficient for the Court to infer that iMortgage ceased to exist subsequent to the Acquisition and entitles LBHI to seek discovery of evidence to support the claim of dissolution.  *See In re: EZCorp,* 181 F. Supp. 3d at 205.

*Cargo Partner AG v. Albatrans, Inc.*, 207 F. Supp. 2d 86 (S.D.N.Y. 2002), upon which loanDepot relies, is not to the contrary.  There, the court, under New York law suggested that an allegation that the seller "is to be dissolved," *id.* at 96, might have been sufficient to support the mere continuation theory.  That statement is akin to the allegation here— that iMortgage "sought to dissolve."  Compl. ¶ 44.  Lastly, loanDepot does not contend that iMortgage continued to exist after the Acquisition or if it did, that it was anything more than a mere gossamer.

### IV.    LBHI HAS ADEQUATELY PLEADED THAT THE ACQUISITION WAS STRUCTURED TO DISADVANTAGE IMORTGAGE'S CREDITORS

loanDepot claims that because a de facto merger will not be recognized absent a claim that the transaction was made in bad faith or structured to disadvantage creditors,[13] the Complaint must satisfy the heightened pleading standard in Fed. R. Civ. P. 9(b).  loanDepot is wrong.

Rule 9(b) provides: "In all averments of fraud . . . the circumstances constituting the fraud . . . shall be stated with particularity." First, and most importantly, loanDepot has not cited a case in which a court has applied Rule 9(b), and the cases loanDepot cites do not involve de facto mergers.  *See* Mot. at 20 (citing cases involving alter ego and statutory fraudulent transfer of assets,

---

[13] *See In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d at 1277; *Orzeck*, 195 A.2d at 378.

none under Delaware law). In any event, a plaintiff's allegations of badges of fraud (allegations which are not subject to Rule 9(b)) will satisfactorily establish actual fraudulent intent to transfer of assets. *See In re Manhattan Investment Fund Ltd.*, 310 B.R. 500, 505 (Bankr.S.D.N.Y.2002) ("Further, because establishing a transferor's actual intent is ordinarily not susceptible to direct proof, courts look to the totality of the circumstances and certain "badges of fraud.""); *In re Tronox Inc.*, 429 B.R. 73, 93-94 (Bankr. S.D.N.Y. 2010)

Second, the cases loanDepot relies upon address situations where allegations arguably fell below the general pleading standard under Rule 8(a). The allegations in those cases were conclusory, *see Apace Communications, Ltd. v. Burke*, 522 F. Supp. 2d 509, 521-522 (lone allegation that defendant "ignored the entity of the corporation and treated the Company as a mere instrumentality"), or vague and internally inconsistent, *see Bravado Inter. Bravado Int'l Group Merchandising Services, Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 197 (E.D.N.Y. 2009) (in an alter ego claim, plaintiff failed to "specify which individual defendant took funds from which corporation").[14]

Finally, the Complaint pleads facts sufficient to infer that loanDepot and iMortgage intended to structure the Acquisition to disadvantage iMortgage's creditors. The Complaint alleges a transfer of ownership, issuance of equity to iMortgage shareholders, continuity of business operations, name, employees, and intellectual property. Importantly, at most loanDepot preserved iMortgage as a mere shell entity, subject to be sued, prior to seeking its dissolution. And iMortgage purportedly retained certain liabilities without sufficient assets to satisfy creditors' claims. *Compare Allstate Ins. Co. v. Countrywide Financial Corp.*, 842 F. Supp. 2d 1216 (C.D. Cal. 2012) (plaintiff "failed to plead facts from which the Court could infer an intent to

---

[14] *Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987), merely holds that Rule 8(b) applies to New York's Debt and Credit Law.

disadvantage or defraud creditors").  Yet, it is not disputed that iMortgage is not operating, and if

a customer or creditor simply searches for that entity, the results default to loanDepot.

## **CONCLUSION**

LBHI respectfully requests that the Court deny Defendant's Motion to Dismiss.

Dated: New York, New York
        September 12, 2019

Respectfully Submitted,

*/s/ James N. Lawlor*
William A. Maher
James N. Lawlor
Adam M. Bialek
Brant D. Keuhn

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile:  (212) 382-0050

*Attorneys for Plaintiff Lehman Brothers Holdings Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF registrants for this matter.

/s/*Robert C. Penn Jr.*